**John DOE, Plaintiff–Appellant**

v.

**COLUMBIA-BRAZORIA INDEPENDENT SCHOOL DISTRICT, BY AND THROUGH its BOARD OF TRUSTEES, Defendant–Appellee**

No. 16-40882

United States Court of Appeals, Fifth Circuit.

FILED May 3, 2017

684

Veronica L. Davis, Attorney, West Columbia, TX, for Plaintiff–Appellant.

Merri Schneider–Vogel, Frances R. Broussard, Thompson & Horton, L.L.P., Houston, TX, Holly Gene McIntush, Thompson & Horton, L.L.P., Austin, TX, for Defendant–Appellee.

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

John Doe sued Columbia-Brazoria Independent School District, alleging violations of 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act. The district court dismissed for the plaintiff's failure to state a claim. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

John Doe is a former student of Columbia-Brazoria Independent School District. He claims he was sexually assaulted in the bathroom at Columbia Elementary School sometime in 2002 when he was in the second or third grade. During the assault, a "male student made sexual contact with

[Doe] from the rear." The assailant allegedly threatened Doe to keep him from reporting the assault. Doe's parents recognized he was upset when he arrived home from school, but Doe initially "denied that anything was wrong." He later told his mother about the assault but "begged that she not disclose the incident until he graduated[.]"

At no time did Doe report the assault to a teacher, administrator, or other school employee. Instead, he claims his teacher should have known he was injured when he returned to the classroom, given his age and the extent of the harm. He further claims the District "knew or should have known" that the other boy had assaulted him or other students. According to Doe, the District failed in its duty to protect him by, among other things, not installing cameras in the school bathrooms. Doe claims he had an unspecified disability at the time of the incident for which "he was often sent [out] of his [class]room to test in a separate place or study in a separate area," which left him "at a greater risk of being unprotected[.]"

Doe claims he suffered in various ways following the assault. For example, he struggled with his self-esteem and "was rejected by girls he asked to school dances" when he was in seventh grade. Another student later accused Doe of "inappropriate touching." Doe claims he tried to tell the principal about his own assault when confronted, but the principal "threatened [him] with criminal action and expulsion from school." Doe's mother ultimately placed him in counseling to address the mental and physical problems that materialized after his assault.

Doe filed his initial complaint in December 2014. His second amended complaint, the live pleading here, alleges violations of 42 U.S.C. § 1983; Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681(a)); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and the Americans with Disabilities Act ("ADA"). In July 2015, the District moved to dismiss the second amended complaint for failure to state a claim. The district court summarily denied the motion "without prejudice to refiling." At a later status conference, the district court offered the District an opportunity to re-urge its motion within a specified time. The District timely filed its second motion to dismiss, which the district court granted.

Doe filed for rehearing on the same day that the district court entered its final judgment. Doe argued that Federal Rule of Civil Procedure 12(g) precluded the District from filing a second motion to dismiss under Rule 12(b)(6). The district court denied the motion without explanation. Doe then filed a second motion for rehearing, which the district court treated as a Rule 59(e) motion to alter or amend the judgment. The district court denied the motion, reasoning that Rule 59(e) is not intended to give litigants a "second bite at the apple[.]" Doe timely filed a notice of appeal.

## DISCUSSION

 "We review the district court's administrative handling of a case, including its enforcement of the local rules and its own scheduling orders for abuse of discretion." *Macklin v. City of New Orleans*, 293 F.3d 237, 240 (5th Cir. 2002). "We review de novo the district court's dismissal for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6)." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007). "Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Id.* (quotation marks omitted). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). We assume "all the allegations in the complaint are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## I. Procedural Claims

■ Doe makes two procedural challenges. First, he claims the district court abused its discretion by permitting the District to file a second Rule 12(b)(6) motion after the original motion was denied. Doe argues that Rule 12(g)(2) bars such filings. The District argues that Rule 12(h)(2) permits successive Rule 12(b)(6) motions and that any error in permitting the second motion was harmless.

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) provides that "[f]ailure to state a claim upon which relief can be granted ... may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." We have previously held that Rule 12(g) does not require consolidation of defenses raised in a second Rule 12(b)(6) motion. *Belo*, 512 F.3d at 141. In *Belo*, the plaintiff sued the defendant in the Southern District of Ohio. *Id.* at 139. There, the defendant brought a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). *Id.* To obviate the personal-jurisdiction issue, the plaintiff moved to transfer the case to the Northern District of Texas. *Id.*

at 139–40. In that court, the defendant again moved to dismiss under Rule 12(b)(6). *Id.* at 140. This time it argued that the suit violated the Texas statute of limitations, and the district court agreed. *Id.* On appeal, the plaintiff argued that Rule 12(g)'s consolidation requirement barred the defendant's second Rule 12(b)(6) motion. *Id.* at 141. We disagreed and held that "Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted." *Id.*

There are procedural distinctions between this case and *Belo*, including that the Texas statute of limitations would not have been relevant until it was clear that Texas law applied after the transfer. Nonetheless, *Belo* does not suggest we were relying on the fact that the two Rule 12(b)(6) motions were filed in two different states' federal district courts. Instead, we said simply that Rule 12(h)(2) allows the filing of a second motion. We apply that same right to this case.

■ In addition, even if Rule 12(h)(2) should not be interpreted this way, there was no harm in allowing the second motion. The District may have raised new arguments in its second motion by adding information about the special-relationship and state-created-danger exceptions to Section 1983 liability. If so, the District could have presented that same argument in a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h) does not prohibit. *See, e.g., Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321 (3d Cir. 2015); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 703 (10th Cir. 2014). The district court did not abuse its discretion in considering the District's second Rule 12(b)(6) motion.

■ Second, Doe argues that the district court abused its discretion by not

allowing further discovery or granting a continuance. Doe sought an extension of time to seek records pertaining to his assault and concerning the perpetrator. Doe contends the District deliberately withheld those records. The District opposed the request, maintaining that it "did not have any records pertaining to the accused student, who had left the district more than a decade before the lawsuit was filed." In response, the district court suggested that Doe depose the District's custodian of records but made clear that any discovery beyond the deadline must be by agreement of the parties.[1] Doe also contends the district court abused its discretion by ruling on the District's motion to dismiss three days after the status conference. Despite representing to the court that he would respond to the District's motion on a certain date, Doe never responded. His failure to respond is especially conspicuous in light of the district court's strict warning on the matter during the status conference.[2]

■ A district court has "exceedingly wide" discretion in scheduling. *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010). The considerations include "not only the facts of the particular case, but also all of the demands on counsel's time and the court's time." *Id.* (quotation marks and alterations omitted). Doe can offer no support for his contention that the district court abused

its discretion with respect to the discovery deadlines. His motion for a continuance was opposed, and he failed to show that the discovery he sought actually existed. That means Doe did not show that the requested discovery would have helped him defeat the District's motion to dismiss even if the continuance had been granted. *See, e.g., Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009). Also, the court indicated that extending the deadline would negatively impact the scheduling demands of other cases. Because the district court has the inherent power to control its own docket, we find no abuse of discretion here. *See Landis v. N. Am. Co.*, 299 U.S. 248, 253–54, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

## II. Section 1983 Claims

■ Doe alleged due-process and equal-protection violations under Section 1983. He argues the District "had an affirmative duty to protect [his] liberty interests," which include the "right to be free of unjustified intrusions of his personal security."

■ A Section 1983 claim requires that a plaintiff "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Texas Collin Cnty.*, 535

1. The District also requested an extension of time for filing dispositive motions because Doe failed to appear for his deposition and was unable to reschedule before the dispositive-motions deadline. The district court granted the request so the parties would have the benefit of Doe's deposition testimony when drafting any motions for summary judgment.

2. The district court stated this during the status conference:

The deal is that there's a Motion to Dismiss for Failure to State a Claim. A response was due. There is no response on file. There needs to be a response on file before I rule. If I rule and there's not a response, then that's the end of it. So you need to be sure that this is a priority. I'm giving you the opportunity. I can't say when I'm going to rule, but I'm just telling you that the deadline has passed for filing a response. You need to make this a priority and file a response to the Motion to Dismiss.

F.3d 365, 373 (5th Cir. 2008) (quotation marks omitted). The right to be protected by the state from private violence is limited and rests on substantive due process. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 853 n.2 (5th Cir. 2012) (en banc). Accordingly, Doe's case presents no basis for a procedural-due-process or an equal-protection claim.

In this case, Doe's claim does not arise from the abuse itself because no state actor committed it. *Id.* at 855 n.3. Instead, there must have been some specific and actionable deficiency on the part of the District that allowed the abuse to occur. *Id.* That requirement can be seen from *Covington*, where nine-year-old Jane attended an elementary school that required her parents to authorize any individual who was permitted to take her from school during the day. *Id.* at 852–53. On six occasions, school personnel allowed Tommy Keyes to take Jane from school, even though he was not authorized by her parents. *Id.* at 853. On those occasions, Keyes took Jane from the school premises, sexually molested her, and returned her to school. *Id.* Jane's guardians sued the school, alleging that the check-out policy "created a danger to students" and was "the direct and proximate cause of Jane's injury." *Id.*

We began our analysis by noting that Jane's constitutional claim against the school was based not on private conduct but on the school's allegedly deficient check-out policy. *Id.* at 855. As a result, her claim could only proceed if she established a special relationship between herself and the school or, potentially, if the state created the danger. *Id.* at 855–56, 863–65.

Jane could not establish a special relationship. *Id.* at 863 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). The case from which the special-relationship requirement was drawn stated that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195, 109 S.Ct. 998. A complainant and the state have that relationship only "when the State takes a person into its custody and holds him there against his will[.]" *Id.* at 199–200, 109 S.Ct. 998. The relationship exists "when the state incarcerates a prisoner," "involuntarily commits someone to an institution," or places a child in foster care. *Covington*, 675 F.3d at 856 (citations omitted). Notably, "a public school does not have a special relationship with a student that would require the school to protect the student from harm at the hands of a private actor." *Id.* Therefore, the school did not have a constitutional duty to protect Jane from the abuse by Keyes. *Id.* at 863.

■ Jane also did not satisfy what we have said would be necessary to establish a claim under the state-created-danger exception—were we to adopt such an exception. *Id.* at 866. We limit our discussion for several reasons. First, in *Covington*, we declined to adopt the exception as the law of this Circuit. *Id.* at 865. Subsequent panels have "repeatedly noted" the unavailability of the theory. *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014). Finally, Doe failed to analyze the theory in a meaningful way in his opening brief. The argument is thus forfeited. *See United Paperworkers Intern. Union, AFL-CIO, CLC v. Champion Intern. Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990).

In summary, Doe's claims are not based on the private conduct of his assailant but on the District's shortcomings in monitoring the students, training the teachers, and

establishing a reporting system for sexual assault. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197, 109 S.Ct. 998. That leaves Doe with only the special-relationship theory, having forfeited the possibility of a state-created-danger argument. There was no special relationship between the plaintiff and the state. Doe has thus failed to prove a constitutional violation.

The Section 1983 claims were properly dismissed.

### III. Title IX Claim

 The district court summarily dismissed Doe's claim of a violation of Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Liability requires several factors to be satisfied:

A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quotation marks and alterations omitted). A plaintiff's failure to plead one of these elements is fatal to the claim. *See id.* at 166.

The district court found that Doe "fail[ed] to allege that [the District] had actual knowledge of the alleged assault" and so could not establish his Title IX claim. Doe's complaint alleges the assault took place in a restroom. There is no suggestion that a teacher or other school employee was present. Instead, he complains his teacher should have known about the assault when he returned to class based on his age and the extent of his injuries. The remainder of his complaint belies that assertion, though. Notably, Doe asked his mother not to reveal the fact of the assault until he graduated to avoid the "scorn and shame" that might follow if his peers learned of the attack. Thus, Doe not only failed to plead actual knowledge but *admitted* the District had no knowledge of his assault.

Doe acknowledges the insufficiency of his pleadings in his appellate brief. "Though not initially pled," he still "contends that the district had either actual or constructive knowledge of the incident[.]" He claims the District's "nonproduction" of certain records is indicative of actual knowledge. As noted above, though, the district court properly handled the discovery dispute, crediting the District's uncontradicted representation that the records Doe requested did not exist. Doe further claims that a "semi-autobiographical account" of his assault, allegedly available in his school record, "was maintained by the District in anticipation of litigation." Upon review, the account Doe referenced details an assault by a gang in a dark alley — not an assault by one person in the school bathroom. That record is not relevant to his claims. Doe thus failed to show the District's actual knowledge required to es-

tablish liability under Title IX.[3] The district court did not err in dismissing this claim.

## IV. Section 504 and ADA Claims

■ Finally, the district court dismissed Doe's claim of violations of Section 504 and the ADA. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Cases concerning either section apply to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

■ To the extent Doe's claims are based on a theory of peer-to-peer harassment, he must prove each of the following: (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment. *Lance*, 743 F.3d at 996 (citation and alterations omitted). As noted in our discussion of Doe's Title IX claim, he did not plead sufficient facts to show the District had

actual knowledge of the assault. Doe's peer-to-peer harassment claim fails on that basis.

The District also claims Doe failed to allege he was an individual with a disability or that any harassment was based on a disability. We need not discuss those additional possible defects.

■ To the extent Doe's claims are based on a theory of disability-based intentional discrimination, he must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Intentional-discrimination liability requires proof that the "school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010) (citation omitted).

Doe alleges that the District acted in a discriminatory manner by allowing him to test or study in secluded locations without "appropriate accommodation." "This failure," he argues, "subjected him to isolation due to his disability which placed [him] in a position of vulnerability [and] led to [the] peer-on-peer molestation incident." The assault, though, took place in the school bathroom. Doe cannot connect the assault with the District's permitting him to test outside the classroom. Doe does not claim the District excluded him from any educational benefit. The district court did not err in dismissing these claims.

---

3. The District also alleges Doe failed to show the District was deliberately indifferent to known harassment, as required by Title IX.

Having resolved this issue on the actual-knowledge element, we do not reach the question of deliberate indifference.

## V. Motions Carried with the Case

Five motions were carried with the case, most of which relate to Doe's late submission of his initial appellate brief. After his initial brief was submitted, it was twice marked insufficient. Doe thus made the requested changes, and the clerk's office accepted his brief. The District now argues that Doe made "substantive changes not necessary to correct the errors in the original brief" without notifying the court or the District. The District moved to strike the portions of Doe's brief that were not necessary to correct the insufficiencies, and Doe moved to strike the District's motion as frivolous.

Having decided the merits of the dispute on the briefing before us, we deny each of these motions as moot.

AFFIRMED.